Good morning, Your Honor. Scott Horngren on behalf of appellant D.R. Johnson Lumber Company. Okay. And I'd like to reserve five minutes for rebuttal. I see another lawyer on your side. Oh, Shea Scott is on the pleadings. I'm not sure. It's just me. It's just you. There's no one from Justice. Yes. Oh, okay. Mr. Schmelzer is here. And what may be confusing in this case is usually I'm sitting at Mr. Schmelzer's table. And usually Mr. Frost is over here. Yeah, okay. But that's how it appears on a case. That's okay. They're the bad guys and they reached a settlement agreement that we're trying to challenge here. Right. Involving the survey and manage standards and guidelines which many in the agency. Yeah, you're both on the same side of v. That's why I got confused. Go ahead. Okay. Okay. So you've got the entire 18 minutes and 57 seconds to yourself. All right. And I'd like to reserve five minutes for rebuttal. Okay. And this case involves the survey and manage standards and guidelines that are referred to by many in the BLM and the Forest Service as the S&M program, a painful provision inserted into the Northwest Forest Plan which required extensive surveys for slugs and snails, mushrooms, lichens, none of which are on the Endangered Species Act. And surveys of many of these species take several years because if it's a plant it has to flower and you have to be there at the time it flowers. The survey and administrative costs cost millions of dollars and the forest restoration projects and timber sales have been delayed. And so for more than half a decade the Forest Service and the BLM have been trying to break free of this costly albatross. However, each time the agencies tried, the Western District of Washington invalidated the attempt, most recently in Judge Kuhnauer's court, which is the case before you today. In response to the last court opinion, the environmental plaintiffs and the agencies reached a settlement agreement that changes the terms of this survey and manage program but did not comply with the substantive and procedural requirements of the Federal Land Policy Management Act, National Forest Management Act, and National Environmental Policy Act, NEPA. And so why we're here today is that we believe these statutes and their regulations require that the amendments or these changes to the Northwest Forest Plan be made through a formal plan amendment including public comment. And this is important because these standards apply to the whole Oregon, Washington, Northern California, 24 million acres. And we're not here today, or I'm not here today, asking you to hold that the plaintiffs and the defendants can't settle this case. They can settle the case. It's just that when they settle or when the settlement such as this involves standards of the Northwest Forest Plan that govern this survey and manage program, the standards have to be made, or the standards have to be changed in compliance with the statutes. Counsel, will you help me with some, as was discussed a little bit at the beginning, this is a very unusual configuration of parties. Usually it's the environmental community that would be making this claim. Why is your client, I know this is a little off record, but I want to understand this because of standing issues and the like. Why is your client objecting to this change? Putting aside the legal issues, what standing does it have? How is it injured by the implementation of the consent decree? It's injured like any other plaintiff would be to the extent that the law provides an opportunity for public comment and requires the agencies to follow particular procedures. And more particularly in this case, my client has a timber sale that has little survey and manage reserves in it that it could harvest without those reserves if the survey and manage program did not apply. One of the issues we raise is the ONC Act. And I understand that. So you're saying that you could do a timber sale that would not if by participating in the normally obligatory public comment that would go along with an APA proceeding or some other amendatory proceeding, and you were successful in getting that carved out. Is that correct? Right. And in particular, they came up and one of the concerns is, you know, we have this timber sale, we buy other timber sales. One of the concerns is that one of the provisions of this settlement says that in an area where the forest is a dry type and you want to take care of red tree voles, you can put a smaller buffer on that, but you have to save all the trees that are 20 inches in diameter. You have to provide a certain what they call stand density index. You have to provide a certain canopy closure. Details in that settlement agreement that are not in the Northwest Forest Plan. And one of the concerns is that that diameter limit, and there is no diameter limit in the plan, is now sort of in graphics. I understand your argument about why you believe this is a plan amendment and therefore illegal. I get that. I just, from a standing perspective, this is so different than the normal configuration. I didn't understand where you came on this. But I understand now why you believe you are injured in a Lujan sense. Yes, Your Honor. And so what we're basically asking the court to do is follow its opinion in Klamath-Siskiyou Wildland Center versus Booty, where the BLM and the Forest Service tried to change this program before for just one species, the red tree vole. And in one instance it changed. They have this requirement that you have to run out into the woods and survey for these in some cases and not in other cases. They call those pre-disturbance surveys. And so the BLM and the Forest Service said there's a lot of red tree voles here so we're not going to require those pre-disturbance surveys anymore. And then ultimately they removed the red tree vole from the list. But this court in the Booty case said that those changes to the survey and manage program had to be made through the plan amendment process. And so in this case we would argue that the standard before the court here is that to approve the consent decree... But Booty applied those statutes to the agency itself, right? There was no consent decree in Booty, was there? That's correct. There was no consent decree, but it was interpreting those statutes that apply here. But you've been arguing... And Judge Cunar said, well, in this view it didn't apply because this is not agency action, this is judicial action. Now, what case do you have that applies these principles to a consent decree? I think the principles... There's the Supreme Court union case, the Turtle Island case, which I'm going to have to address here, in which this court approved a consent decree, but in our view it's very clear that even in the Turtle Island case the standard is that a district court can approve a consent decree if it's fundamentally fair, adequate, reasonable, and complies with applicable laws. Now you look at where did this survey and manage program come from? Does the National Forest Management Act say you have to have it? Excuse me, counsel, I just want to... In answer to Judge Tashima's question, what case do you have that deals with a consent decree? Now, I know you said you're going to have to distinguish the Turtle Island case, but do you have a case that answers the point that Judge Tashima raised? I think the Turtle Island case does provide for entry of a consent decree. I mean, the way it reached a different result, but it lays out the law in that case, the Ninth Circuit law as we understand it, that if the court is going to approve a consent decree, it cannot approve a consent decree that violates the law. And in our view here, there is a violation of the ONC Act, the FLPMA, NEPA, and the National Forest Management Act. And this court has in the Turtle Island case said, look, that consent decree is sound because it was temporarily restoring the status quo and it didn't change anything new. And that was a case involving fishing regulations and that sort of thing. And here, the settlement agreement does change the Northwest Forest Plan because it shifts the intensity of surveys required. It adds and subtracts species from the Survey and Manage Program, and it establishes those new standards that I had mentioned previously. One of the things that troubles me, the Turtle Island case did appear to allow the consent decree to last indefinitely, as does this consent decree. Would you address the issue of whether a consent decree needs to be, in effect, temporary, or can it be permanent and still satisfy the issues that you claim are being violated here? I think it doesn't make a difference in our argument, okay, because if it's permanent, that would even be more egregious in that it will never be changed. In this particular case, the appellees are going to argue that it's not permanent, that the Forest Service or the BLM can change their plans in the future. In either case, we believe by imposing these on the ONC lands, without going through the public comment process, and here, under the Federal Land Policy and Management Act, it says, the Secretary shall, with public comment, and consistent with the terms and conditions of the Act, develop, maintain, and where appropriate, revise the land use plans. And further, it says it should give the public adequate notice and opportunity to comment and participate in the formulation of these plans for management of public lands. I'd like to turn to the ONC Act case, and we believe that this equitable remedy, basically, which is what a consent decree is, that was embodied by the settlement agreement, imposes no harvest reserves on the ONC timberland, which represents about 10% of the Northwest Headwaters versus BLM, that timber production is the dominant use on these lands, and that wild conservation, or for that matter, fungi, lichen, or mollusk conservation, is not a goal of the ONC Act at all. So, under the ONC Act, timberland is to be managed for permanent forest production, and this court in Headwaters found that meant timber production. And BLM, in Excerpt of Record 109, concedes that the survey and manage standards substantially constrains timber production. Counsel, I know that you alleged that the ONC Act precluded application of the SM, as you call it, to the ONC lands, but I think it was only in the context of the cross-motion for summary judgment about remedy. Yes. Is that sufficient to avoid a waiver problem here on the ONC issue? We believe it is. If it's not, clearly, I mean, we... Because Bulker's got a... You're not going to get around the waiver issue based on Bulker, are you? Well, we believe that we raised it in our summary judgment brief. It was raised by plaintiffs in the context of what should the remedy be in this case? What should the injunction be? Should there be an injunction? What should the scope of the remedy be? We responded in our summary judgment motion, our cross-motion for summary judgment, and in our response to their summary judgment motion, that in that particular case, the survey and manage any resolution, equitable resolution in this case, cannot apply the survey and manage standard to the ONC lands. But there was nothing in the complaint about the ONC issue, right? There was nothing in the complaint about the ONC issue, but we were defendant intervenors, and we could raise that to say that, look, they're asking you to apply this. And as you all know from the injunction jurisprudence over the last couple of years, that even in a permanent injunction case, you look and evaluate the public interest, the balance of harm, and basically the legal ability to impose the injunction. And I'd like to point out this court to the Oakland Cannabis case of the Supreme Court. And there it said, a court sitting in equity cannot ignore the judgment of Congress explicitly expressed in legislation. A consent decree is an equitable action of the court. And they held that the Controlled Substances Act could be enforced, but where there was a medical necessity, it needn't be enforced. And the court said, the Supreme Court said, the Ninth Circuit got it wrong. And that was an unusual expression. Yes, they rarely do that, the Supreme Court does. But we'd argue... Yes. And then lastly, and I'll conclude here and save the remaining time for rebuttal. Let me pick up on that. I understand where you're sitting. The first plan is adopted by regulation, notes and comments, right? So if you then have a consent decree that modified or contradicted the regulation, the first plan is regulation. Where is there a conflict here? There is a conflict in two respects. One, in our view, a procedural conflict that says, because these changes impact in most of the survey and manage is applied to the matrix area of the Northwest Forest Plan where timber production is supposed to occur. And because the survey and manage program is a part of the forest plan, we maintain that you need to go through the amendment procedure. And as an equitable matter, and as a legal matter in terms of a consent decree, a settlement agreement, or what have you, cannot violate any law that under the ONC Act, these preserves cannot be applied to the BLM land. You just restated the question. Did you hear my question? I accepted all that you just said. And that's where I started. I said, yes, if there's a conflict, it can't do it. I understand that argument. Now I ask the question, where is there a conflict? So, you know, what you need to do is say regulation says X, the order says not X, or it says Y that's fundamentally inconsistent with X, or something of that sort. I don't want generalities. I don't want broad, you know, give me like an F4 example. Yes, and one of the examples I used was... Just give me one. Just give me a best example. I understand this is not everything. Just give me an example. The best example is under the Federal Land Policy Management Act with that statutory language that directs the agencies to go through and change their plans through that amendment. There's also some regulations and statutes in the National Forest Management Act that says you have to make these changes. Those have been interpreted by this court in Native Ecosystems versus Forest Service and Happner versus Tidwell where there were changes that they wanted to make. You need to be a lawyer, because, you know, you like to talk, okay? What I would like to do is answer your question. I'm going to ask this question one more time, and if you don't answer it in 30 seconds, we're done, okay? The regulations say X, the plan says something else, not X, or something inconsistent with X. I don't want an explanation. I don't want a history. I don't want a statute. What I want is an example of conflict. All right. Okay, so you've got so many in mind? Yes. Okay, you've got 30 seconds to answer that, and then we're done. The ONC Act says that the timber land in the ONC lands must be managed for timber production. In this particular instance, for red tree voles, the Survey and Manage Program provides that there will be 10-acre no-cut buffer reserves on the ONC timber lands, and that is a direct conflict, and I'll save the remaining time. But that has absolutely nothing to do with your argument that this has to be done by regulation. If it's a conflict between this and the statute, then you've got a conflict, and no amount of regulation, notice and comment, or any of that stuff will help you. So, give me an example. I'm going to give you another 30 seconds, just to make sure that we're perfectly fair about this. Give me an example of where they do one thing that the force plan says X, one thing, and the consent decree says something that's inconsistent with that, that could be cured if you just went ahead and amended the force plan by notice and comment. Okay. Just give me one example, your best example. All right, I'll try one last time. There are four species, one lichen, one mollusk, and one fungi, and a salamander at ER 26 through 28, that are currently not in the force plan that are added to Survey and Manage as a result of this settlement agreement. In addition, there are several species of lichens and plants... When you say added, added to what, for what purpose? Which require either pre-disturbance surveys or reserves where you can't cut that weren't in there before the settlement agreement. In addition, what the settlement agreement does is it shifts some of these species from protective categories to more protective categories where surveys are required where they weren't before, or buffers are required where they weren't. Those are found on ER 26, the Nephromum oculatum. That shows they're different, but where's the conflict? Why can't they say, look, under the force plan we'll do X, we'll do survey, plus we now have a consent decree that requires more stuff. You could have both regimes. Where's the conflict? Where are the two things incompatible? There's a conflict because in the settlement agreement you see restrictions that aren't in the plan, and your argument is, well, those are just additional restrictions. They don't... It's just a question. I'm just saying, why can't the two live side by side? I mean, you may not like it, but... Right. And we don't like it in... There's nothing about the consent decree, what you told me, that requires them to violate the force plan, right? Correct. But what they are doing is, the force plan, for example, under the National Forest Management Act, it says actions that the Forest Service and BLM take must be consistent with the force plan, or they have to go through an amendment procedure. Here, the action of adding species is not consistent with the existing force plan, and so they have to... That triggers the procedures. It would be just the same... This is a two-way street. If they decided to remove something from the plan, or add something to the plan, because of the nature of the program itself, carries all these requirements. Let's take Judge Kuhnhauer out of the picture. Let's just take this out of the picture. Let's say the Forest Service on its own says, you know, we have these requirements under the plan, and we just think that we're going to apply these requirements more broadly, just because, to be safer. Is there any conflict with the plan that says, no, they can't do more? What's the violation there? Yeah, there is. An example I might use is, if they decided in a plan that they are now going to require more species that would have, as they have here, restrictions associated with it, that has resource implications for, if they're trying to harvest in an area to reduce the fuel load, or to get after disease, and those prevent the ability to do that, that is a problem, and that's why plan amendments are required. It would be, you know, in our view, if you had a diameter limit of 20 inches, that was struck in the plan. If they just decided willy-nilly, well, we're going to drop that and allow harvest trees down to 18 inches now, plaintiffs would be here, and likewise, if they changed that provision of the plan to 22 inches and said, oh, now all those trees can't be cut, that's a substantive provision that has to go through the procedures. Thank you, Your Honor. Okay, thank you. Okay, we'll now hear from the other side. Good morning, Your Honor. It's John Smeltzer for the Federal Defendants, the BLM, and the splitting time with Pete Frost, Counsel for the Conservation Groups, who are the other parties to the settlement agreement. Your Honor, D.R. Johnson raises two objections to the settlement agreement, one procedural relating to the NFMA and FLPMA statutory procedures that apply to plan amendments, and one substantive relating to the ONC Act. I'd like to start with the FLPMA and NFMA issues, and our argument there is relatively simple. You're from Washington. I am from Washington, Your Honor. Those acronyms just go triply off your tongue. Right off the tongue. It takes long time to say National Forest Management Act, Your Honor. I remember dealing with SMCRA when I was at the Clare school. Don't even ask what that is. Another good one. Your Honor, our argument with respect to NFMA and FLPMA is relatively simple, and the argument is this. If the court could grant the equitable relief that is being provided in the consent decree on its own accord, then it can't be suddenly unlawful when the parties agree to it as part of the consent decree. Well, can it? I'm sorry. Can it? Well, we submit. You said if. That's the question, isn't it? Well, the point is, if it's something that's within the scope of the remedial relief that can be provided for the NEPA violation of the terms. Take the example that opposing counsel suggested. I mean, let's say district court says, you know, it says 20 inches. We'll make it, we'll let you go down to 18 inches. I think that's the way it goes, right? Smaller. So you can cut, or 15 inches, 16 inches, right? Sure, the first plan says that, but I'm a district judge. I can do anything. I'll make it, I'll say it's okay to cut down to 16 inches. That wouldn't be valid, right? I mean, it violates the plan. The plan is a regulation, right? And unless the regulation is held to be invalid, district judge can't just change the number there, right? That's correct, Your Honor, but the plan amendment, the amendment which was to remove the survey and manage standard and guidelines was held invalid. It was held invalid by the district court after summary judgment rulings on the merits of whether there was a NEPA violation. So where we start this case is from the point where the court says, look, there's a NEPA violation. The agencies did not sufficiently study the environmental impacts of removing the survey and manage guidelines. The standard remedy in that context is to set aside the amendment, the proposed removal of the survey and manage standards, and to reinstate it. Why isn't it then you go back and redo it? You go back through your process and, you know, have, you know, so this is bad. You've got a process that came up with a product that is defective. We don't fix it. We don't write regulations. You know, we are a federal court. We're not, we don't publish in the Federal Register and all that stuff. Strike it down, go back, have another notice and comment, and do it right. I mean, why isn't that, why isn't that the standard, correct, and exclusive remedy that a district court can offer? Well, I guess the issue is whether it's the exclusive remedy, and we would submit it is a standard remedy. Well, that's the question, that's the question I asked. I said why, and you said that's a good, that's a good question. Thank you. I, how about now answering the good question? Okay, it's not an exclusive remedy because this Court's opinions have never said the only remedy a court can issue. Well, why would we say it in this case? It's absolutely correct, so why don't you talk me out of it? Well, it's not correct for this case, Your Honor, because it's... You know, we can't make law. Yes, Your Honor. Okay, so tell me why not. Why isn't it correct? Look, you've got the regulation. We've struck down the regulation. We don't rewrite regulations. What we do is we say you go back and redo the regulation, using the normal process the agencies use to adopt regulations, which means you set it up for comment, people, you know, the whole thing, you know, and it's your risk that you get it wrong, and we strike it down again and again. We'd love to do it. Because the Court can and does have equitable discretion to set aside amendments to plans or... Set aside... In part, in part, Your Honor. Set aside... In order to remedy the violation... But we're agreed, we're agreed they can't... Well, what happens... You can strike down in whole or in part, but you can't add to it, right? We can't rewrite regulations, right? In general principle, it cannot be additive, but that's... No, no, no, no, no, no, not in general principles. You can't do it. If you disagree with the categorical standard you can't do it, you tell me when you can. You can't, we can't add to if the remedy, the standard remedy is to set aside the amendment and reinstate survey and manage. It wouldn't be an appropriate remedy to add to. How can you reinstate if... It's an amendment that would take away survey and manage, Your Honor. If you take away the amendment, survey and manage remains. It's the purpose of the amendment was to remove a standard and guideline in the rule. If the amendment that would have removed the survey and manage guidelines is struck down as being insufficient under NEPA because the agencies did not take a sufficient look at the environmental impacts of that, again, the remedy would be to strike down the amendment and then you're back to the plan as it existed previously. And is that what this court did? That's what this court did in part. But what it did is it allowed certain equitable exceptions which do not injure D.R. Johnson. I find that a very disturbing concept. I really do. I mean, we all agree that the normal approach is if the district court strikes it down, says in this case it didn't comply with NEPA, go back and do it. What it appears happened here is that the government and the environmental group got together, which is rare, they got together and basically said, let's put aside all this NEPA stuff and let's not worry about it. Let's agree upon what we won't fight about. And they did. And the district court said, that's sweet. Let's bless it. Isn't that what happened here? I submit not, Your Honor. What happened here was the parties got together and agreed that the violations that were found by the district court, that were violations as to certain aspects. What the district court found was that the agencies didn't study important aspects of removing surveying maps. Right, and they didn't study it afterwards either, did they? In 2007, though, in the environmental analysis that was done and in the rules that were studied, the agencies did study, for example, the impacts of annual species reviews. But with respect... And those weren't challenged, Your Honor. With respect, counsel, again, I'm just trying to understand this because this is such a rare configuration here. It seems to me that what happened was that the groups that normally oppose each other changed their minds so that what might otherwise be a challenge became an agreed solution. And instead of going back and doing a new study, trying to comply with the court's decree, you crafted something else. I assume you would agree that the district court could not, either by itself or with the consent of the parties in this case, come up with a change that would completely be in conflict with the congressional statute, right? Yes, Your Honor. Okay. So now let's get down to the regulations. If you have a regulation and the chief asks your opposing counsel to give a good example of conflict, he didn't really give us much of that there, but let's assume for a moment that there is a conflict, that there's an actual conflict between the existing regulation and what the consent decree says. Why isn't that a disturbing concept that the parties can, by agreement with the imprimatur of the district court, amend regulations without public comment and the normal review process? Because there is no conflict. No, I get that. Before Survey and Manage is reinstated as a remedy for the improper amendment, there is no Survey and Manage with which these new exceptions can conflict. Okay. So your response is there is no conflict, therefore there is no problem. Is that right? Well, what I'm saying is there's no conflict with an existing aspect of the forest plan, of the Northwest Forest Plan, because what the court is simultaneously doing is reinstating part of the Survey and Manage Standards and Guidelines. And the question is, when the court reinstates the Survey and Manage Standards and Guidelines, does the court have to put them all back, right? What the district court decided is to remedy the NEPA violation, it didn't need to put them all back because there were certain aspects of them that did not violate it. But by taking them out, it has amended the regulation, has it not? Well, no. Because the regulation previously included them. Well, the agencies took the amendment that the agencies conducted in 2007 was to remove Survey and Manage. Survey and Manage is only back as a result of the consent decree. I understand. And the agency is putting it back. The district court struck it. The district court putting it back. The district court struck it down. So then the parties get together and says, you know, before there was this whole loaf, we strike down the whole loaf, but you're going to have five slices and we're going to put it back and we're not going to put the rest of the slices there. That's an amendment, isn't it? It's not an amendment in the sense that what the court was saying is we don't have to strike out down the entire amendment that got rid of Survey and Manage. We don't have to reinstate Survey and Manage in its entirety to remedy the NEPA violation that was in this case. Hadn't the court already done that? Didn't it already strike down the amendment? A previous court had, but not this court, Your Honor. This court decided the NEPA issue and then said, look, the parties asked for different things in terms of remedy. The conservation groups and – So where does the court get authority to reinstate something that another court has struck down? It was a new plan amendment, Your Honor. Well, that's how – I mean, you call it reinstate, but to me that sounds to me like it's writing regulations, creating something anew. I mean, the other thing was struck down. It's gone. It's done. It's dead. You can't resurrect it. At that point, what you're doing is writing a new requirement. You're writing a new requirement. They're calling it a reinstatement. Your Honor, what I was referring to was there was an earlier injunction of an earlier attempt to remove Survey and Manage. And so as a result of that injunction, the agencies went back to complete the regulatory process to create amendment that would remove Survey and Manage. Again, the court found there was a NEPA violation. And then at that point, the issue is how do we remedy this NEPA violation? Do we need to reinstate Survey and Manage in its entirety, or can we remedy the NEPA violation by restoring most of Survey and Manage but giving the agencies the flexibility that they saw in some of these changes, like with respect to the annual species reviews and with respect to some of these exemptions, which did not injure the timber industry. The flexibility is beneficial to the NEPA. You go back and do the regulations over. That's how you resolve it. You know, the thing was struck down. Your Honor, if this court wants to make a rule that any time a forest plan or amendment is found to be deficient, procedurally deficient, under NEPA, the only choice for a district court is to strike it down in its entirety or to leave it in place, then that's the result you would have to come to. But there is no precedent that establishes such a rule. The precedent in this court says that's not the choice because this is not a situation where we're saying it's got to strike it down entirely as opposed to partially. That's what they're asking for. That's what they say is wrong with this. They agree you can strike it down in its entirety. It's already been struck down. Only through the consent agreement. That's what we're trying to say, Your Honor. The consent agreement was an agreement as to remedy. The district court did not decide to already strike it down until the parties got together and said, okay, that's an appropriate remedy. But we don't have to go all that way, right? We don't have to go all the way there because we don't need to go all that way to remedy the NEPA violation. That was said in the earlier court decision, not before the current district judge, but the previous district judge? Well, the previous district judge had done something similar, Your Honor, had struck it down in its entirety, and then the parties got together and agreed on certain exemptions. And Mr. Orndrej, representing the American Forest Resource Council, agreed to those changes. And so we say the precedent in this case and the precedent from this court's decisions is that district courts have equitable authority when they find a NEPA violation to do something short of getting rid of the amendment in its entirety or reinstating the previous rule in its entirety. If something violates the law three times, it's better than once. In other words, if the district court kept violating the law, kept amending with the consent of the parties. Obviously, we don't agree that the first time the district court. No, I'm just saying, hypothetically, if that was wrong. Hypothetically, if that was wrong, then it's wrong here. I mean, you've got the same problem. But if the court makes that finding, the court's essentially saying, not just in consent decrees, but in general, with respect to any time a district court finds a NEPA violation with respect to a rule or amendment or something of this sort, that the only options are to set the whole thing aside and make the agency start over or not set it aside. On the NEPA portion, that's probably true. That's not true according to this court's previous precedents. That's not what this court has said in prior NEPA cases. This court has said that the district courts have discretion, equitable discretion to remedy the particular violation. And if there's a NEPA violation, it doesn't necessarily go to all aspects of a rule. What's your best case on that point? We've cited the cases in our brief, Your Honor. What's your best one for that point? I'm sorry. I don't have the case name on the tip of my tongue, Your Honor, because, quite frankly, the notion that district courts have that equitable authority, I didn't believe was controversial. With respect to both counsel, it seems to me that the way that you have each cited cases, they're just kind of bass-ackwards, frankly. You've got one citing for one thing, another for another thing. It's directly opposite of what they're usually cited for. So we're going to really have to crawl through the weeds to get this one sorted out. But equity does not give somebody the authority to violate a statute or a regulation. And we would agree, Your Honor. Absolutely. And we're not here to argue that it doesn't. We're just here to say that the general principle, if it's within the district court's power to act, it's not subject to the FLTMA and NFMA statutory requirements. And we submit, for the reasons we stated, that what the district court did here was reasonably within its equitable powers, for the reasons we stated in our brief. You can file a 28-J letter with your best case or cases in the next 24 to 48 hours. Okay. We'll hear from our co-counsel. Good morning, Your Honors. Pete Frost for Plaintiff's Appellees. In direct answer to your question, Judge Smith, the best case on point is High Sierra Hikers v. Blackwell. It concerned this court's affirmance of an injunction issued for a NEPA violation in which the district court sitting in equity did two things important to this case. Number one, it allowed the challenged activities to continue. And number two, it changed the substantive management standards for those activities. This concerned commercial pack stock operations in the Ansel Adams and John Mayer Wilderness areas. And were they pre- I'm not familiar with that case, but in that case were they operating pursuant to the National Forest Management Act or something of that nature where there was a regulation? Were they purported to change a regulation or they rejected an amendment to the regulation? They were operating under both the substantive provisions of the Wilderness Act and the National Forest Management Act. Okay. And what was it that was done here where somebody challenged it, I gather, saying that it violated NEPA, I assume that's what it said. That's correct. So the court said, I agree with you. There's a NEPA violation here. And then what happened? Well, it was with my case, so I know it relatively intimately. Okay. What happened was we were challenging pack stock services in the Wilderness areas, but my clients didn't want them shut down. We didn't want the bright line rule D.R. Johnson asked for today, which is a vacature in all instances of a decision on NEPA grounds. We wanted pack stock operations to continue where they wouldn't be harmful to the resources in the wilderness. So we went to the district judge and we said, despite the fact that you have found that the authorizing instruments for these operations are illegal under NEPA, we want you to order these operations to continue. However, subject to these protective provisions, which were different than those that had previously been adopted, pursuant to the Wilderness Act and the National Forest Management Act, for how those operations would run in wildernesses. Do you remember who was on the panel of that case? Yes, Judge Hug wrote the opinion. Judge Hug wrote the opinion. That's correct. And it was Judge Gibson from the Eighth Circuit, if I remember correctly. That's correct as well. And let's see. Judge Fisher? Judge Fisher. Yes, Presiding. I'm looking at the case and this doesn't seem to help me very much. I'm looking at the discussion and what this court did there is order the agency to analyze the cumulative impacts. So what it did is this court ordered the agency to do something. It didn't impose its own regulations. So I don't see how this helps you. Well, this court actually, with respect, Your Honor, affirmed the district court's order on challenge by the pack stock operators related to relief. And part of that order as well was a remand to further analyze the cumulative impacts of those operations. Yes. The district court did both. My point is the district court did both. It changed the substantive standards for how those operations would run for a NEPA violation. But that's quite different from changing the actual regulation, which is what the district court did here. What it did is it said, look, this is the new standard. I'm sending it back to the agency to apply the new standard. There's nothing unusual about that. It's quite different from saying here's the new standard. I'm going to write a new regulation that applies a new standard. That didn't happen in High Sierra. If I may, Your Honor. I have this right here. I think the American has gone off track in one respect, if I may. Judge Peckman reinstated the survey and manage standard in 2005. It remained on the books through this litigation. After she had reinstated the standard for the agency's 2004 record of attempt to eliminate it, the agencies went back and asked her to modify her injunction, and she said no. The survey and manage standard has remained in place through the course of this litigation. And that is why the consent decree doesn't use the verb reinstate. We wouldn't have agreed to that. It says the survey and manage program is in effect. And so when Judge Kuhnhauer is presented with what do I do now? I'm sorry. I have no idea what you just said. I'm saying that you didn't use the magic word to reinstate. You're saying, poof, it's in effect, and that's not. I have no idea. It never went away, despite the fact that there had been a 2007 record of decisions, and my point is when you're looking at the question of the district court's equitable authority. I have no idea what that means. I'm sorry. I just have no idea. What do you mean it didn't go away? The court had reinstated it in 2005. The agencies issued decisions to eliminate it. They were not effective because they did not have the power to unilaterally do away with a standard that a court had reinstated. And when they asked the district judge to amend her injunction to do that, she said no. Okay. She said, your rods standing alone do not change my order that this standard is in effect. What does this have to do with High Sierra? What does this have to do with High Sierra, which is what you were explaining to Judge Smith. You said our best case is High Sierra. What does that have to do with? I'm just looking at it, too. I don't see it. Both High Sierra and this case concern ongoing activities, an ongoing program. And the narrow issue here raised by D.R. Johnson is can a district court in the relief phase of a case issue relief that does not comply with simply and exclusively the public participation procedures of the Federal Land Policy and Management Act and the National Forest Management Act? And my answer is that's precisely what happened in High Sierra-Hikers v. Blackwell. I've got it here. Show me where. You've got the case? I don't have it in front of me. I have it in my head. Take mine. You have it where? I'm sorry, Your Honor. It's the first discussion in Judge Hugg's opinion where he affirms the district court's injunction. Come take it. It's open right to the case. Just find the discussion and point it to us. Right here we are. I'm probably just missing it. I mean, it's a big, long case. It's your case, right? Page 643 of this opinion, Your Honor, discusses the instance in which the district court balanced the injunction not only gave relief pending to address the injuries, but did not drastically curtail the packers' operations. May I return this to you? Yeah. I want to look at it. Okay. So that's what the court said as a fact occurred then, and where is the reasoning that allows it to change the application of a regulation? That's what occurred. That's what was up on challenge tonight. Lots of things occur in cases. Cases stand for the propositions they hold, the issues that are then challenged, and the court addresses. The fact that other stuff happens in the background is of no consequence. Unless the court's attention is drawn to it, and the court then says, yes, this is okay, then it doesn't help you much. There's nothing. That's your best case. That's a case that was like this procedurally. You said that's your best case. That's the case. Do you have a better case? No, I don't have a better case. Do you think you'll come up with one in the next 24 or 48 hours? If I find one, I'll write a 28-J letter, Your Honor. But I'd like to, if I may, in my limited time. Okay. You have negative minutes, actually. Go ahead. D.R. Johnson's claim here, despite bringing up the ONC Act now, never presented to Judge Kuhnhauer in its objections. Raise the summary judgment motion here. I don't know what's in it. Once they lose on that, you don't like to go back to a district judge and keep rubbing his face in it once he's ruled against you, right? I'm sorry. I don't understand your question. They raised the objection at the summary judgment stage. Okay. But there was a bifurcated proceeding. We went into remedy. I'm sorry. D.R. Johnson. What I said is a fact. Yes, it was in their briefs on summary judgment. Okay. And you think that once a judge rules against you at summary judgment, you're supposed to raise it again? He didn't address remedy at summary judgment, Your Honor. He deferred remedy for the second stage of the case. And when D.R. Johnson was given the opportunity to explicitly raise objections to the proposed settlement, the Oregon and California Lands Act is not in its objections. Its exclusive claim was a district court cannot, sitting in equity, order relief that departs from the public participation procedures of two statutes. And those statutes by their terms apply exclusively to federal agencies. Okay. Thank you, Your Honor. Thank you. One minute on remedy, Your Honor. One minute. Here's what we'd like you to do. Declare that the settlement doesn't comply with the statutes, the procedural statutes. Remand back to the district court. The parties, we're not saying there can't be a settlement in this case. The parties are entitled to adopt a settlement that provides for changes to survey and manage and as a proposed amendment to the plan. And lastly, that you direct that the survey and manage not be applied to the BLM O&C. Mr. Counsel, you're asking us to do the very thing that they did, but only for the benefit of your client. No, that whatever they come up with, to the extent it results in a change to the plan. I mean, we've done this for example. Finish your sentence. Yeah. I know. This is what lawyers do. Finish your sentence. You don't remember what the sentence was, right? I don't remember what the sentence was, no. What you want them to do is that anything that. That changes the plan and goes through a plan amendment. Okay, but that's different than what you just said. It sounds like you were saying that send it back to the district court, let the parties talk again, and they'll amend the plan. No, no. No, I think what you said was the most district court consent decree can do is to contain a proposed amendment, right? Yes, and to give you an example, the timber industry challenged the survey and manage program a long time ago in some of these suits we were talking about. And as a result of that settlement, there was an agreement to consider an alternative to get rid of the program. What you want, though, what you want, though, is the district court to remand it back to the agency. Is that what you want for further action? You know what I think you guys should do is we've got a super mediator here in Seattle. I think you should go out there and we have a great mediation office. I think you guys should just go and talk about it and just solve it yourselves instead of having us do this. Anyway, think about it. We consider the possibility of mediation. Anyway, Casey and Steig will send something. If you've got 20 AJ letters or anything, send them in the next 48 hours or so and do consider mediation. Okay.
judges: Kozinski, Tashima, Smith